TURNEY *v.* COMBINATION BRICK CO.

1. MORTGAGES — CORPORATIONS — PROMOTERS — FRAUD — FIDUCIARY RELATION.

Where complainant owned real property which was suitable for the manufacture of brick and made a contract with a promoter to convey his interest to the promoter, who in turn executed an assignment of his interest to the proposed corporation which the promoter attempted

to and did organize, and where it was alleged that in the interest of certain stockholders of the company the promoter made untrue representations as to its value and the amount which had been subscribed to the stock, the representations being contained also in the articles of incorporation and tending to show that a majority of the capital stock had been subscribed and paid in, although in fact the promoter had only an agreement with complainant to transfer and convey the property to him or his assigns upon the payment of the price, evidence considered, and *held,* insufficient to establish complainant's complicity in the alleged .fraud.

2. CORPORATIONS — VENDOR AND PURCHASER — CONTRACTS—ASSIGNMENTS.

Where defendant corporation, in order to secure funds with which to carry on its business upon the security of property that complainant had transferred, or agreed to transfer, to it, executed a mortgage for four thousand dollars without any action of the shareholders so as to enable complainant to assign the mortgage and procure a loan of the amount agreed upon, the mortgage was valid without the action of the stockholders: borrowing funds for ordinary needs of a corporation does not require such action, and the execution of the mortgage to secure the loan by the proper officers of the corporation constituted a valid transaction.

Appeal from Wayne; Mandell, J.    Submitted November 20, 1914.    (Docket No. 140.)    Decided March 17, 1915.

Bill by William M. Turney and others against the Combination Brick Company to foreclose a mortgage. Judgment for complainants. Defendant appeals. Affirmed.

*Chamberlain, May, Denby & Webster* (*Stellwagen & MacKay,* of counsel), for complainants.

*Lucking, Helfman, Lucking & Hanlon,* for defendant.

OSTRANDER, J.    The bill is filed to foreclose a real

estate mortgage, dated May 23, 1911, executed by Combination Brick Company, a corporation, to William M. Turney and Alta S. Turney, his wife, in common, conveying certain premises in the county of Wayne, Mich. It purports to secure the payment of $14,500 in certain annual installments, with interest at 6 per cent. per annum; the debt being evidenced by five certain promissory notes, made by the mortgagor. The certificate of acknowledgment is dated May 26, 1911, and that of the register of deeds May 27, 1911. To secure a loan of $4,000, made to Turney and his wife, and evidenced by their promissory note, the mortgage was assigned June 10, 1911, to the Dime Savings Bank. The assignment of the mortgage was recorded June 12, 1911. This mortgage provides for declaring the whole sum secured, principal and interest, to be due for default in the payment of interest, or of taxes on the property, or of principal. Nothing having been paid on the mortgage, and the $4,000 note remaining wholly unpaid (it not falling due until three years after date), on August 16, 1912, notice of default and election was given by the bank to the mortgagor, and on August 19, 1912, the bill was filed, the mortgagees and the bank joining as complainants, setting up their rights respectively and claiming there is due the principal and all past-due installments of interest and interest on interest. Complainant bank offers to treat as due and to accept payment of the $4,000 secured by the said assignment. The defendant, Combination Brick Company, answered the bill, admitting that Turney and his wife procured certain notes and a mortgage purporting to be executed by certain officers of defendant, "as alleged in said bill of complaint," but denies there was any consideration for the notes or that the mortgage is a valid subsisting lien on the property described therein, denies that the mortgage was lawfully authorized or executed. The

charges in paragraphs 3 to 14 of the bill inclusive are neither admitted nor denied, "it not having sufficient knowledge thereof to permit it either to admit or deny the same." Chancery Rule 10 (d). Proceeding, defendant claims the benefit of a cross-bill against complainants, and sets out with considerable detail the existence of facts and circumstances which, it is contended, require the notes and mortgage of complainants to be delivered up to be canceled and the granting of other relief against complainant William M. Turney only. To the cross-bill the Turneys filed their joint and several answer, and the bank its several answer.

It appears that William M. Turney was owner of the mortgaged premises, that he conveyed them to the defendant, first by land contract, and later by deed, that the mortgage debt was a portion of the selling price, and that another portion was represented by stock of the defendant company, held by him. It was, and is, the contention of defendant that a fraud was perpetrated upon defendant in its organization and thereafter, by its promoters, by means of which the subscriptions of certain shareholders were secured and by means of which Turney received an exorbitant price for his property. In connecting Turney with the alleged fraud, it was, and is, asserted that he was one of the promoters of the defendant company and so occupied towards it and stockholders a fiduciary relation and a duty to disclose all facts affecting the company and its property, that intending shareholders, who afterwards became shareholders, understood, and Turney represented, that the property in question belonged to the corporation, in accordance with the facts stated in the articles of association; that a promoter's fraud cannot be waived by the directors so as to bind the corporation and its shareholders; that Turney is estopped to deny that the land did not belong to the defendant; that the bank occupies no better position than he. A further contention was made in the court

below, and is made here, namely, that, by a certain instrument and assignment thereof, Turney passed his title and interest in the land to the corporation on or about the time defendant was incorporated. But this is not the theory of the cross-bill, which charges, in substance, that Turney and his co-promoters designedly omitted and failed to have transferred and conveyed to defendant the property in question.

There is no doubt about Turney's original ownership of the property, nor that he engaged himself morally, if not legally, in July, 1907, to agree to sell and convey the land and appurtenances to one William J. Richards, since deceased, or to such person as he should name, upon certain terms. The property is not very valuable for farming purposes, but contains a deposit of clay suitable for making brick, and there were upon it certain buildings, machinery, and utensils used in brickmaking. I have no difficulty in finding that no money was paid to Turney when this first and preliminary agreement was made, and that it was understood that Richards meant to try to dispose of the property to a corporation to be organized for making brick, and that the admitted down payment of $7,000 was for the benefit, or supposed benefit, of Richards.

In March, 1908, articles of association of the Combination Brick Company were filed with the secretary of State, indicating a capital of $50,000 with 5,000 shares of stock, it being represented in the articles that there was then subscribed $32,010, which had been paid in—$3,010 in cash and $29,000 in other property, itemized and valued, being the property, or some of it, in question in this suit. The essential facts recited in these articles were wholly untrue, since Richards, one of the subscribers, had no more than an arrangement with the owner of the property to secure it. Pursuing his plan to secure capital and embark the corporation in the business of making brick, Rich-

ards interested some persons who had money, among them Mr. R. S. Webb, and, by his assistance, some others. Turney himself agreed to take, and did take, some stock in defendant company, 3,201 shares of which appears to have been originally issued to William J. Richards, William Keith, and Robert J. Keith —to the latter one share. Turney's original and continuing purpose and desire was to sell his property at his price. He knew that Richards, to whom he was willing to pay a commission, was trying to sell it, and in the way indicated. Talked with by Webb and others, he undoubtedly spoke approvingly of the scheme and of the suitableness of the property. It may be said that he aided and abetted Richards, and in many ways supported the project. But I think it is not established that he ever represented that the property in question belonged to the corporation, or ever knew that any such representation was made by others or by another. It is doubtful if any one promoting the scheme made any such representation, orally, and it does not appear that any one subscribing for or buying stock saw the articles of incorporation or knew what was recited therein. These articles Mr. Turney did not subscribe. Under date May 11, 1910, he executed and delivered to the defendant a contract for the sale of the property for $29,000, payable, $14,500 down, the remaining payments divided and deferred. He was paid $9,500 in stock and $5,000 in cash, and the payment was indorsed on the contract. It does not distinctly appear by whom all of the outstanding stock was then held. It does appear that substantially all, if not all, of it was held by persons who then knew the exact situation of affairs. If they were any of them before that time ignorant of the fact that Turney owned the property, it was not because of his representations. Thereafter the defendant engaged in making brick. It seems likely that if Mr. Webb had lived capital could have been secured

and the business continued. The authorized capital was increased, and a prospectus was issued containing representations more or less appealing to investors. No new subscriptions to stock were secured by means of the prospectus. The business was not successful. An effort to borrow some money was unsuccessful. It was then arranged to take a deed of the property from Turney, give him a mortgage—the mortgage in suit—and that he should borrow for the defendant, on his own account and that of his wife, $4,000, using the mortgage as collateral security. This Turney and his wife did, giving their joint note therefor to the complainant bank. Defendant used the money.

I have made a somewhat general statement of the facts, but sufficient perhaps to disclose the nature of the controversy. I agree with the learned trial judge, who said:

"I am not convinced by the proofs offered here that the allegations of the cross-bill are sustained. I am not satisfied from the proofs that there was any fraud on the part of Mr. Turney that would justify the court taking the action sought."

The contention that on March 14, 1908, Turney assigned his interest in the land to defendant is unsupported by the facts in evidence and, to go no further, the writing relied upon to prove it is open to the construction put upon it by complainants. The execution of the notes and mortgage in suit was one way of securing title to the land and getting rid of the contract. It added nothing to the debt of the corporation, and the borrowing of $4,000 for the needs of the company required no action of the shareholders.

The decree must be, and is, affirmed, with costs to appellees.

BROOKE, C. J., and McALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.